# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

JOANN BUYTENDORP,

                                 Plaintiff,

v.

EXTENDICARE HEALTH SERVICES,
INC.,

                                 Defendant.

Civil No. 04-4166 (JRT/FLN)


**MEMORANDUM OPINION
AND ORDER**

---

Clayton D. Halunen, **HALUNEN & ASSOCIATES**, 220 South Sixth Street, Suite 2000 Pillsbury Center, Minneapolis, MN 55402, for plaintiff.

John D. Thompson and John C. Hauge, **RIDER BENNETT, LLP**, 33 South Sixth Street, Suite 4900, Minneapolis, MN 55402, for defendant.


Plaintiff JoAnn Buytendorp ("Buytendorp") brought this lawsuit against her former employer, defendant Extendicare Services, Inc. ("Extendicare"), alleging negligent supervision and violation of the Minnesota Whistleblower Act, Minnesota Statute § 181.932.[1]   Extendicare moves for summary judgment on all of Buytendorp's claims.   Extendicare also appeals from the November 23, 2005 Order of United States Magistrate Judge Franklin L. Noel, denying its Motion to Amend Scheduling Order to

---

[1]  This action was originally filed in the state district court of Hennepin County, Minnesota, and was removed to this Court on September 21, 2004, pursuant to 28 U.S.C. § 1441. This Court has subject matter jurisdiction based on diversity. 28 U.S.C. § 1332.  Extendicare is a Delaware corporation with its principle place of business in Wisconsin.  Buytendorp is a resident of Minnesota and seeks damages in excess of $75,000.  *Id.*

Bring a Motion for Sanctions.  For the reasons discussed below, the Court grants Extendicare's motion for summary judgment and denies Extendicare's appeal.

## BACKGROUND

Buytendorp was the Administrator of Extendicare's Trevilla extended health care facility from 1996 to 2004.  From 1996 to early 2003, Buytendorp received positive job reviews.  In late 2002, Extendicare hired Laurie Bebo as vice-president of the region in which Buytendorp worked.  Buytendorp claims that Bebo instituted policies at Extendicare that violated laws and/or rules and regulations relating to insurance and health care.  Buytendorp alleges that she was terminated for sharing her concerns and for refusing to implement those policies.

Buytendorp claims that she shared her concerns with four different colleagues: Craig Eddinger, Walter Levonovich, Sue Cullen, and Jim Hendricks.  Buytendorp states that she shared her concerns with Eddinger by telling him once, in early 2003, that she thought that one of Extendicare's policies violated Medicare payor source laws and regulations.  Buytendorp admits that she did not tell Eddinger specifically which law or regulation the policy violated.  In addition, she made no written notes of her concerns, and she never mentioned her concerns to Eddinger again.

Buytendorp claims that, roughly one year later, in January 2004, she told Levonovich that she thought that one of Extendicare's policies was "illegal," and that it was also illegal to keep patients longer than medically necessary.  As with Eddinger, Buytendorp did not specify which law or regulation was being violated, and she did not

mention her concern to Levonovich again.  Buytendorp claims that she made a similar remark to Cullen, on one occasion, but admits that she did not specify which law or regulation was being violated.  Finally, Buytendorp asserts that she also told Hendricks of her concerns that Extendicare policies were "illegal," however, she again failed to specify which law or regulation was being violated.

Despite having these concerns, Buytendorp states that she never called Extendicare's compliance hot line, she never drafted or sent a letter or an email, she never made any written notes, and she never made a written report.

In April 2004, Hendricks and Cullen met with Buytendorp and other Extendicare employees at the Trevilla facility regarding the HealthTrac program.  Buytendorp claims that she thought the policies discussed at the meeting were illegal, however, she "was quiet" during the meeting because she did not want to "participate" in a meeting about illegal policies, and because she was afraid that if she complained, she would be in trouble.

After that meeting, Hendricks and Cullen had a closed-door meeting which Buytendorp was not allowed to attend.  After that meeting, Cullen met with Buytendorp, and informed her she was being placed on a performance improvement plan, or "PIP," because Buytendorp was not meeting budgetary expectations.

Buytendorp received the PIP on April 14, 2004, which specified areas for improvement, and gave her one month to improve.  Buytendorp claims she complied with the PIP, except to the extent it would require her to engage in conduct plaintiff thought was illegal.  However, Buytendorp also admits that she had told Bebo on weekly

conference calls that she was following the policies, including the ones she thought were illegal.  Moreover, Buytendorp does not claim that she told anyone why she was not fully complying with the PIP.  Buytendorp's employment ended roughly one month later, in May 2004.

**ANALYSIS**

## I.      SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A court considering a motion for summary judgment must view all of the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *See*, *e.g.*, *Anderson*, 477 U.S. at 256; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995); *Ring v. Sears, Roebuck & Co.*, 250 F. Supp. 2d 1130, 1138 (D. Minn. 2003).  "The facts asserted, however, must be properly supported by the record."  *P.H. v. Sch. Dist. of Kansas City*, 265 F.3d 653, 657 (8th Cir. 2001).  "If this evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." *Taylor v. White*, 321 F.3d 710, 715 (8th Cir. 2003) (quoting *Anderson*, 477 U.S. at 249-50).

## II.   WHISTLEBLOWER ACT

Minnesota Statute § 181.932 (the "Whistleblower Act") prohibits an employer from taking adverse employment actions against an employee because the employee reported in good faith a violation or suspected violation of any federal or state law or rule to the employer.   Minn. Stat. § 181.932(a).   The Whistleblower Act also prohibits an employer from taking adverse action against an employee for "refusing" to perform an action that the employee has an objective basis in fact to believe violates any law or rule, so long as the employee informs the employer that the order is being refused for that reason.   Minn. Stat. § 181.932(c).

Claims under the Whistleblower Act are analyzed under the *McDonnell Douglas* burden-shifting framework.   *Ring*, 250 F. Supp. 2d at 1134 (citing *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 445 (Minn. 1983) and *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).   Under that framework, a plaintiff is first required to state a prima facie case, at which point the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action.   If the defendant provides a legitimate, non-retaliatory reason, then the burden shifts back to the plaintiff to show that the reason is a pretext.   *Id.*

Under Minnesota law, a prima facie case under the Whistleblower Act consists of: (1) statutorily protected conduct by the employee; (2) adverse employment action; and

(3) a causal connection between the two.  *Ring*, 250 F. Supp. 2d at 1134 (citing *Dietrich v. Canadian Pac. Ltd.*, 536 N.W.2d 319, 327 (Minn. 1995)).

Buytendorp asserts that her verbal remarks to Eddinger, Levonovich, Cullen and Hendricks regarding her concerns about Extendicare policies constitute protected "reports" under the Whistleblower Act.  Buytendorp also asserts that she engaged in a protected "refusal" under the Act when she did not comply with the PIP to the extent she thought compliance would be illegal.  Each contention will be considered below.

### A.     Report

The Whistleblower Act prohibits employers from taking an adverse employment action against an employee who, "in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official."  Minn. Stat. § 181.932, subd. 1(a).

The statute does not define "report" or provide specific guidance in its interpretation.  Minnesota courts have defined a "report" as a communication that presents concerns in "an essentially official manner."  *Janklow v. Minn. Bd. of Exam'rs for Nursing Home Adm'rs*, 536 N.W.2d 20, 23 (Minn. Ct. App. 1995) (quoting *Am. Heritage Dictionary*, 1531 (3d ed.1992)).  In determining whether an employee made a protected "report," courts look at the content of the report as well as the reporter's purpose in making the report.  *Obst v. Microtron, Inc.*, 614 N.W.2d 196, 202 (Minn. 2000).  The district court may determine as a matter of law that certain conduct does not

constitute a "report" for purposes of the Whistleblower Act.  *Cokley v. City of Otsego*, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001).

In *Cokley*, the plaintiff claimed that she made a protected "report" based on a memorandum she wrote, in which she stated that the her employer's procedures were not in conformance with the Federal Labor Standards Act.  *Cokley*, 623 N.W.2d at 630-31. The court disagreed, holding that the memorandum was merely a "non-specific reference to past practices not in conformance with the FLSA," and that it was therefore insufficient as a matter of law to implicate a current violation of law.  *Id.* at 631.

Viewing the facts in the light most favorable to Buytendorp, the Court holds that Buytendorp's verbal remarks do not qualify as protected "reports."  Buytendorp claims she told a few of her colleagues that she was concerned that some of Extendicare's policies or practices may not be in conformance with unspecified laws or regulations relating to insurance and health care.  Here, as in *Cokley*, these remarks are so vague as to render them fatally "non-specific."  *See Cokley*, 623 N.W.2d at 630-31.  In addition, Buytendorp's complaints do not in any way resemble a report that "presents concerns in an essentially official manner."  *See Janklow*, 536 N.W.2d at 23.  On the contrary, the undisputed evidence shows that Buytendorp purposefully avoided engaging in any conduct that would present her concerns in an official manner:  she sent no emails, wrote no memoranda, requested no meetings, and never called Extendicare's compliance hot line.  Accordingly, the Court holds that Buytendorp did not make a protected "report" under the Whistleblower Act.

### B.     Refusal

Buytendorp also claims that she engaged in a statutorily protected "refusal" under the Whistleblower Act, by remaining "quiet" during a meeting in which allegedly illegal policies were being discussed, and by refusing to perform under her PIP to the extent it required her to engage in illegal conduct.  The Whistleblower Act prohibits an employer from taking adverse employment action against an employee who "refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason."  Minn. Stat. § 181.932, subd. 1(c).

Buytendorp has not engaged in a protected "refusal" under the Whistleblower Act. Buytendorp does not claim to have ever informed Extendicare of the reason for her "refusal," and even if she had, she has failed to establish that she had an "objective basis" to believe that the action she refused to perform would be illegal.

The Court holds that Buytendorp has failed to set forth specific facts showing that she engaged in protected conduct under the Whistleblower Act.   Accordingly, Buytendorp is unable to make out a prima facie case under the Whistleblower Act, and her claims under the Whistleblower Act fail as a matter of law.[2]

---

[2] The Court notes that the parties submitted additional briefing regarding the deposition testimony of Diane Willette, a former Extendicare employee.  Plaintiff contends that Willette's testimony is relevant to the third element of the prima facie case – whether there is a "causal connection" between Buytendorp's conduct and the adverse employment action.   However, because the Court holds that Buytendorp did not engage in protected activity – the first element of the prima facie case – the Court need go no further in its analysis.

## III.    NEGLIGENT SUPERVISION

Buytendorp also asserts a claim for negligent supervision, arguing that her continued employment was conditioned on her participating in fraud, thus putting her at risk of loss of her professional license and incarceration.

Minnesota courts have held that some form of physical injury is required to recover under a claim of negligent supervision.  *Semrad v. Edina Realty, Inc.*, 493 N.W.2d 528, 533-34 (Minn. 1992) (citing the Restatement (Second) of Agency § 213 and the Restatement (Second) of Torts § 317); *see also Bruchas v. Preventive Care, Inc.*, 553 N.W.2d 440, 443 (Minn. Ct. App. 1996) (citing same).

Buytendorp does not claim to have suffered any physical or bodily harm. Therefore, her claim for negligent supervision fails as a matter of law.

## IV.    APPEAL FROM MAGISTRATE JUDGE ORDER

Extendicare appeals from the Magistrate Judge's Order denying its Motion to Amend Scheduling Order to Bring a Motion for Sanctions, arguing that it should be permitted to bring a motion for sanctions based on Buytendorp's conduct in seeking and taking the deposition of Diane Willette.   An order of a Magistrate Judge on nondispositive pretrial matters may be reversed only if it is clearly erroneous or contrary to law.  See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.1(b)(2).

In its appeal, Extendicare is essentially raising, for the second time, its opposition to Buytendorp's deposition of Diane Willette.  The substance of these arguments was previously considered and rejected by this Court in its Order dated September 29, 2005.

In addition, the Court notes that although Extendicare now asserts that counsel for Buytendorp committed "misconduct" while taking the deposition, Extendicare has failed to identify, with any particularity, the nature of the alleged misconduct.

The Court holds that the Magistrate Judge's denial of the motion to amend was not "clearly erroneous."

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment [Docket No. 11] is **GRANTED.**

**IT IS FURTHER ORDERED** that the Magistrate Judge's Order of November 23, 2005 [Docket No. 140] is **AFFIRMED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:   February 9, 2006                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                           JOHN R. TUNHEIM
                                                  United States District Judge